UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CORNELIUS RODRIGUEZ MORANT,**

    **Plaintiff,**

    v.

**VANESSA MOYER,** *et al.***,**

    **Defendants.**

Case No. 2:21-CV-05211
JUDGE SARAH D. MORRISON
Magistrate Judge Kimberly A. Jolson

### REPORT AND RECOMMENDATION AND ORDER

Plaintiff Cornelius Rodriguez Morant, a *pro se* prisoner, brings this action pursuant to 42 U.S.C. § 1983 against Vanessa Moyer, Cornell L. Birden, and John Glenn Murphy, agents of Reds Bailbonds. (Doc. 1-1). The matter is before the Undersigned for consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 1) and the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e). Plaintiff has also submitted several exhibits, which have been reviewed. (Doc. 4).

For the reasons that follow, Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. Furthermore, having performed an initial screen and for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

**I.**    **MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

Upon consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2), Plaintiff's Motion is **GRANTED**. Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statement reveals that he has an insufficient amount to pay the full filing fee. (*Id.*).

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust account at the London Correctional Institution is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six months immediately preceding the filing of the Complaint. After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00 until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Checks should be made payable to Clerk, United States District Court and should be sent to:

Prisoner Accounts Receivable
260 U.S. Courthouse
85 Marconi Boulevard
Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

Consequently, it is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

**II.  INITIAL SCREEN**

    **A.  Relevant Standard**

Because Plaintiff is proceeding *in forma pauperis*, the Undersigned must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." In reviewing a complaint, the Court must construe it in Plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555). Although *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### B. The Complaint

Plaintiff alleges that on July 3, 2019, at approximately 9:30p.m., Defendants Moyer, Birden, and Murphy trespassed into his home in South Carolina and attempted to arrest him without a warrant. (Doc. 1-1 at 5-6). He asserts that Moyer told Birden to pick the lock to the back door and let Moyer and Murphy into the home. (*Id*. at 6). Guns drawn, the three then walked through the home in the dark, searching for Plaintiff. He alleges that the defendants frightened his children, tased his dog (which later died of its injuries), put a gun to the head of his fiancé, Alvetta Coffee, and tased her. (*Id*. at 5-7). When Coffee called law enforcement, Defendants left the home. (*Id*. at 6). But, says Plaintiff, they reentered the home later that evening after Birden pushed in a window air conditioner unit and crawled through the window, again letting Moyer and Murphy enter. (*Id*.).

Coffee again called law enforcement. (*Id*. at 7). She was informed that law enforcement was aware that Moyer was present at a neighboring address. (*Id*.). Coffee explained that they were at a different address, and law enforcement said they would send someone out. (*Id*.). When Moyer, Birden, and Murphy learned that law enforcement personnel was coming, they fled the home and drove off in Moyer's car. (*Id*.).

According to Plaintiff, all three Defendants were later arrested and charged in Magistrate's Court in Richland County, South Carolina, for the events of that night: Moyer was charged with ill treatment of animals and "torture;" Birden was charged with burglary; and Murphy was charged with possessing a weapon during a violent crime. (*Id*.; Doc. 4 at 5-7).

The Complaint does not allege that Plaintiff was detained by Defendants on July 3, 2019. Instead, it indicates that Plaintiff surrendered to law enforcement in South Carolina on or about July 21, 2019. (Doc. 1-1 at 7). In April 2020, Plaintiff was extradited to Ohio by "Agents of Vanessa Moyer Red Bailbonds acting as U.S. Government officials." (*Id*.). Plaintiff alleges that the agents "entered Sumter County Detention Center . . . to pick up Plaintiff and transported" him to Ohio for proceedings in the Belmont County Court of Common Pleas. (*Id*. at 7, 22). Notably, the Complaint attaches a Docket and Journal Entry issued by the Belmont County Court on April 13, 2020:

> The Court having been notified that Defendant has been apprehended in the State of South Carolina hereby permits his bonding company, Red's Bail Bonds, c/o Vanessa Moyer (owner) . . . or their employee . . . to safely and lawfully return Defendant to the Belmont County Jail, forthwith. The said Vanessa L. Moyer is directed to notify the Court as soon as Defendant is in the Belmont County Jail.
> Upon the return in accord with this Order, the bonding company will be released from its obligations under the bond.

(*Id*. at 22). The Belmont County Court later "expresse[d] its gratitude to Red's Bail Bonds and Vanessa L. Moyer for arranging for and providing Defendant's transportation to the Jail. In

4

consideration, the Court will not Order the forfeiture of the bond ($10,000) and will, in fact, release the bonding company from its obligation on the bond." (*Id*. at 14).

Plaintiff asserts that as a result of these events, his fiancé suffered a heart attack, his children need counseling, and his dog has died from his injuries. (*Id*. at 5). Plaintiff himself is suffering from post-traumatic stress disorder. (*Id*.). In addition, the door to his home was damaged and the air conditioner unit broken. (*Id*.). He seeks compensatory and punitive damages for the injuries to himself and others. (*Id*.).

Plaintiff claims a deprivation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. (*Id*. at 3). He asserts that Moyer acted under color of state law when she "went beyond her legal lawful authority as a bonds Agent [and] entered Plaintiff's residence without [a] Warrant." (*Id*. at 4). Birden and Murphy similarly "acted as a bond Agent [and] entered Plaintiff's residence." (*Id*.). He asserts that some or all of the Defendants "acted as public officials when caught inside Plaintiff's residence." (*Id*. at 5).

C. **Discussion**

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must set forth facts satisfying two elements: "(1) a deprivation of a right secured by the Constitution or law of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted). Based on the allegations in the Complaint, Plaintiff cannot succeed on his claim against Moyer, Birden, and Murphy because they are private parties and were acting unilaterally when they entered his home and attempted to arrest him on July 3, 2019. To the extent that they may have been acting with the alleged approval of state actors in transporting or extraditing Plaintiff from South Carolina to Ohio, he has failed to allege a deprivation of constitutional rights with respect to that April 18, 2020 transportation.

5

1. *The Events of July 3, 2019*

Plaintiff alleges that Moyer, Birden, and Murphy acted under color of law when they entered his home on July 3, 2019. (Doc. 1-1 at 4). The Complaint alleges that Moyer acted under color of state law when she "went beyond her legal lawful authority as a bonds Agent [and] entered Plaintiff's residence without [a] Warrant." (*Id*.). He alleges that Birden and Murphy similarly "acted as a bond Agent [and] entered Plaintiff's residence." (*Id*.). As discussed below, these facts, taken as true for purposes of this screening, show that Defendants were not acting under color of state law.

Regarding the second element of a § 1983 action, "[t]he traditional definition of acting under color of law requires that the defendants in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "Therefore, as a general rule, § 1983 does not reach the conduct of private parties acting in their individual capacities." *Weser v. Goodson*, 965 F.3d 507, 515-16 (6th Cir. 2020) (citing *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007)).

This element requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982).

> The conduct of a private party will be deemed to constitute state action only if it meets one of three (or four) narrow tests. The first is the symbiotic relationship test, or nexus test, in which the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson* [*v. Metro. Edison Co.*, 419 U.S. 345, 357-58 (1974)]. Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970). Third, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49-

> 50. *See generally*, *Lugar*, 457 U.S. at 936-39 (discussing three tests). Finally, the Court of Appeals has referred to an "entwinement test," under which the action of a private party constitutes state action where the party " 'is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it.' " *Vinstein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009) (quoting *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001)).

*Hubbard v. Abbott Bailbonds Agency LLC*, No. 1:20-CV-294, 2021 WL 1589109, at *2 (W.D. Mich. Apr. 23, 2021). Actions by a bondsperson do not definitively meet the public function or state compulsion tests. *See id*. at *2–3 ("Bail bondsmen are not state actors under the public function test when making an arrest because arrests are not traditionally the exclusive prerogative of the State," and "are not state actors under the state compulsion test because states do not coerce them to make arrests, let alone arrests that involve excessive force or that result in injury to third parties."). The Complaint alleges no facts that would satisfy the entwinement test. With respect to the symbiotic relationship or nexus test, some actions by bondspersons may satisfy the test in some instances, but the facts alleged in the Complaint here do not.

"Generally, bounty hunters and bail bondsmen are not state actors for purposes of § 1983." *Brown v. A Second Chance Bail Bonds*, No. 19-3253, 2019 WL 6726915, at *2-3 (D. Kan. Dec. 11, 2019) (citing *Green v. Abony Bail Bond*, 316. F. Supp. 2d 1254, 1261 (M.D. Fla. 2004)). *Accord Erwin v. Byrd's Bail Bonding*, No. 2:10-1948, 2010 WL 3463881, at *2 (D.S.C. Aug. 5, 2010), *report and recommendation adopted,* 2010 WL 3489113 (D.S.C. Sept. 3, 2010) (citing *Johnson v. Third Jud. Cir. of South Carolina,* No. 4:10-0887, 2010 WL 2429715, *1 (D.S.C. June 10, 2010)) ("It is well-settled that bail bonding companies and bail bondsmen do not act under color of state law."). "As a general matter, bondsmen are private citizens who interact with the state in the course of pursuing their private interests . . . ." *Dean v. Olibas*, 129 F.3d 1001, 1006 n.4 (8th Cir. 1997). *Accord Ouzts v. Maryland Nat. Ins. Co.*, 505 F.2d 547, 555 (9th Cir. 1974)

7

(recognizing that "the bail bondsman is in the business in order to make money and . . . [is] acting 'to protect his own private financial interest and not to vindicate the interest of the state.'") (citation omitted).

Courts have generally found bondspersons to be private actors when they act unilaterally, without assistance from law enforcement officials. *White v. Wilson*, No. 1:18-CV-00093, 2021 WL 809674, at *3–4 (M.D. Tenn. Mar. 3, 2021). Conversely, "[m]ost modern courts hold that bondsmen act under color of State law when they act in concert with police officers, or in some other way attain[] state authority." *Evans v. City of Etowah*, No. 1:06-CV-252, 2007 WL 1143948, at *3-4 (E.D. Tenn. Apr. 17, 2007). "The majority of circuits that have considered this issue have focused on whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals and, in the absence of allegations that law enforcement officers provided affirmative assistance or joined bondsmen in effecting the apprehension as joint actors, these courts have not found state action." *Lopez v. Zouvelos*, No. 13-CV-6474, 2015 WL 5657361, at *7 (E.D.N.Y. Sept. 23, 2015) (citing decisions of the Fifth, Eighth, Ninth, and Tenth Circuits); *see also Jackson v. Pantazes,* 810 F.2d 426, 429 (4th Cir. 1987) (holding that the *Lugar* test was satisfied where a police officer assisted a bail bondsman in entering a home and restrained its occupant during the bondsman's search for his principal).

For example, where a bondsman called deputies before and during the search of a home and the detention of its occupants, asked the deputies to come to the scene, escorted a deputy onto the property, told them about contraband that had been found, and participated in the search and questioning of the plaintiff, the court found sufficient state action to overrule a motion for summary judgment. *White,* 2021 WL 809674, at *4. In *White*, the bondsmen also "suggested to the plaintiffs that they were connected with law enforcement in their interactions with them," where "the bounty

8

hunters (who had been hired by the bondsmen) carried firearms and a taser, wore bulletproof vests with 'Fugitive Recovery Team' written on them, wore 'badges,' and called out 'Wayne County Police Department' when they entered the house." *Id*. In a simpler case, where bondspersons "operated in conjunction with members of the [Police] Department" during an arrest in which the bondsmen and the police acted together and "[t]he police were first through the door into Plaintiff's home," and where the bondspersons arrested plaintiff's son simultaneously with the police arresting plaintiff, sufficient state action was found. *Evans,* 2007 WL 1143948, at *4; *accord Jackson*, 810 F.2d at 427–29.

On the other hand, in a case where a bondsman had a warrant but "did not purport to act pursuant to the warrant in any respect," "did not attempt to enlist the assistance of local law enforcement officials, and . . . did not display the warrant to [Plaintiff] or anyone else [but] unilaterally seized [Plaintiff] in Texas and returned him to Louisiana," there was no state action. *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204 (5th Cir. 1996). And, where a bounty hunter came to a plaintiff's door but did not enter and did not arrest her, and where plaintiff herself called for police assistance, the bounty hunter was not acting under color of state law. *McGregor v. Shane's Bail Bonds*, No. 10-CV-2099, 2010 WL 3155635, at *14 (D. Kan. Aug. 9, 2010), *aff'd sub nom. McGregor v. Snyder*, 427 F. App'x 629, 633 (10th Cir. 2011).

Here, Plaintiff states that Moyer, Birden, and Murphy entered his home without a warrant on July 3, 2019. (Doc. 1-1 at 4). Although Plaintiff alleges that they had informed law enforcement of their anticipated presence at a nearby address, Defendants did not enlist the assistance of law enforcement in the attempted arrest; and, instead, they fled when his fiancé called law enforcement and personnel were dispatched to the home. (*Id*. at 6–7). Further, Defendants were later arrested for their actions. (*Id*. at 7; Doc. 4 at 5–7). Even taking all of Plaintiff's

9

allegations as true, Defendants were not acting in concert with law enforcement. They were acting unilaterally and in pursuit of their own financial interests—avoiding forfeiture of their bond—and as such are considered private actors. (Doc. 1-1 at 14, 17, 19-22).

This determination is consistent with the Sixth Circuit's holding in *Corethers v. Atlas Bonding Co.*, 7 F.3d 232 (6th Cir. 1993) (unpublished table decision). There, the Court affirmed the summary dismissal of a § 1983 complaint against a bonding company and its employees because the complaint was legally frivolous under 28 U.S.C. § 1915(d). The Court so held without lengthy analysis, finding that the claim failed on the state action element:

> Corethers's action may not survive in federal court, because he has not shown that the defendants' conduct is fairly attributable to the state or that their actions were taken under 'color of state law.' Further, as properly found by the district court, the allegations must be construed as a complaint against a private actor, with any wrongdoing to be remedied pursuant to state law, rather than under federal or constitutional law."

*Corethers*, 7 F.3d at 232 (citations omitted). *Corethers* confirms the general rule that bondspersons are not state actors solely by virtue of their status as bondspersons. More is required—such as the assistance or participation of police officers in the attempted arrest—and is absent here.

Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be granted with respect to the events of July 3, 2019.

   2. *The Events of April 18, 2020*

As noted, the Complaint states that the events giving rise to his § 1983 claim occurred on July 3, 2019, the date of the events discussed above. (Doc. 1-1 at 5). Nonetheless, the Undersigned briefly addresses the events of April 18, 2020. The attachments to the Complaint appear to suggest that Defendants were acting at the behest of the Belmont County Court, and therefore under color of state law, when they extradited or transported Plaintiff from South Carolina to Ohio for prosecution. (*Id*. at 7, 22). To the extent Plaintiff has attempted to plead a § 1983 claim with

10

respect to the events of April 18, 2020, the claim also fails. Plaintiff has failed to plead any facts alleging a "deprivation of a right secured by the Constitution or law of the United States" with respect to the April 18 transport. *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). He alleges only that "Agents of Vanessa Moyer Reds Bailbond acting as U.S. Government officials who entered Sumter County Detention Center, 1250 Winkles Road, Sumter, S.C. 29153, (803) 436-2340, to pick up Plaintiff and transported" him. (Doc. 1-1 at 7). He does not identify any unconstitutional deprivation of rights with respect to this action or plead any facts from which such deprivation could be inferred. Accordingly, the Complaint fails to state a claim upon which relief can be granted with respect to the events of April 18, 2020.

### III.    CONCLUSION

Based upon the foregoing, Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. However, having performed an initial screen, for the reasons set forth above, it is **RECOMMENDED** that the Court **DISMISS** the Complaint in its entirety. Further, should the District Judge adopt this recommendation, the Undersigned further **RECOMMENDS** that the District Judge find that any appeal in this matter by Plaintiff would not be taken in good faith, and that Plaintiff may not proceed on appeal *in forma pauperis*.

### Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

Date:  December 16, 2021 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE